# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2771

_____

Mary Mwihaki Hamilton,      *
     *
        Petitioner,      *
     *
     *    Petition for Review of
      v.      *    an Order of the Board
     *    of Immigration Appeals.
Eric H. Holder, Jr., Attorney General    *
of the United States,      *
     *
        Respondent.      *

_____

Submitted: May 15, 2012
Filed: June 5, 2012

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Mary Mwihaki Hamilton, a native and citizen of Kenya, applied for cancellation of removal as a battered spouse of a United States citizen under 8 U.S.C. § 1229b(b)(2)(A). An Immigration Judge (IJ) denied her request for immigration relief, and the Board of Immigration Appeals (BIA) affirmed. Hamilton petitions for review of the BIA order. We dismiss the petition for lack of jurisdiction.

Hamilton came to the United States in the early 1990s and through mutual friends met Boylee Hamilton, a United States citizen, in the spring of 1995. The two

married in December 1995, but the marriage deteriorated quickly because Boylee used alcohol and drugs and subjected Hamilton to verbal abuse. He moved out in 1998, and the couple divorced in 2004. Prior to their divorce Hamilton twice applied for lawful permanent resident status through her marriage to a United States citizen, but the United States Citizenship and Immigration Services (USCIS) denied both applications. The second application was denied after Hamilton indicated that she would abandon it because the marriage was "not going forward."

The Department of Homeland Security initiated removal proceedings against Hamilton in 2006. Its charging document alleged that Hamilton was subject to removal under the Immigration and Nationality Act (the Act) as an immigrant who at the time of application for admission was "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act." 8 U.S.C. § 1182(a)(7)(A)(i)(I). Hamilton conceded that she was removable but sought relief in the form of special rule cancellation under the battered spouse provisions added to the Act by the Violence Against Women Act (VAWA). See 8 U.S.C. § 1229b(b)(2)(A). She also filed a petition with USCIS, seeking a determination that she was an alien battered or subjected to extreme cruelty by a United States citizen spouse and thus eligible to adjust her status to that of a lawful permanent resident. See 8 U.S.C. § 1154(a)(1)(A)(iii). USCIS denied her petition after concluding that she had failed to show battery or extreme cruelty. The Administrative Appeals Office affirmed the denial.

The IJ then held a merits hearing on Hamilton's application for VAWA cancellation in May 2009. Hamilton testified about her marriage, explaining that she had fallen in love with Boylee soon after meeting him in 1995 and that the two had married at a Minneapolis courthouse later that year. She testified that she wanted to have a family and planned that she and Boylee would visit Kenya together. She also explained that Boylee had problems with alcohol and drug use and was often unemployed. Their relationship deteriorated she stated, and they began to have

"intense differences." By 1997 they would go for weeks without seeing each other. Hamilton stated that Boylee would curse at her, call her derogatory names, tell her to get out, take advantage of her sexually, and threaten not to support her immigration petition. She stated that his abusive behavior caused her emotional distress. She also submitted a letter describing physical health problems she developed as a result of his emotional abuse.

Hamilton was questioned about discrepancies in tax and insurance documents which had been submitted to the IJ which cast doubt on the good faith of her marriage. For example, employment and tax documents from her husband listed his marital status as "single" and an address different from those she had reported as their marital home. She explained that he had probably listed another address because he owed back taxes and child support and "thought the system . . . would catch up with him" if he reported his true address. When questioned about why she had reported her own status as single on tax forms, she said it was because she wanted more money withheld from her paycheck. She explained that the reason she listed herself as single on insurance paperwork was to "pay less." She also explained that she listed her husband as a "friend" on a disability insurance form because he "was [her] husband and [her] friend."

Hamilton also testified about the hardship that she would suffer if removed to Kenya. She stated that she belonged to the Kikuyu tribe, one of that country's most predominant tribes which was targeted by other tribes after recent elections. She testified about her involvement in her Minnesota community and her job working at Wells Fargo Bank. Her attorney also argued that because of the length of time she had lived in the United States it would be an "extreme hardship for her to return to Kenya." Despite this argument, Hamilton acknowledged that she had a number of relatives in Kenya who had financial resources, including her mother and several siblings.

In August 2009, the IJ denied her application for VAWA cancellation and ordered her removed to Kenya. The IJ did not find her marriage to be fraudulent, but "note[d] many inconsistencies in information provided by [the Hamiltons] concerning their marriage" which caused the judge to question her "overall credibility" in evaluating her application. The IJ concluded that she had failed to meet two of the requirements for VAWA cancellation, because she had not shown that she had been battered or subjected to extreme cruelty by her husband or that her removal would result in extreme hardship. In determining that she had not shown hardship, the IJ noted that she had a "very supportive family" in Kenya, that her education and work experience indicated she would find work in Kenya, and that there was "no reason to think that [she] cannot find the necessary support for any residual problems stemming from her marriage." Based on these considerations the IJ concluded that although her removal "may cause hardship through job loss and the breaking of social [ties]," these were hardships "normally associated with removal" and insufficient to establish "extreme hardship" under the Act. See 8 C.F.R. § 1240.58.

Hamilton appealed the IJ's decision to the BIA, which dismissed the appeal. It noted that she had submitted "contradictory evidence concerning the bona fides of her marriage" and concluded that she "did not satisfy her burden of proving that her marriage was entered into in good faith." It also upheld the IJ's finding that she had not shown that she would suffer "extreme hardship" if removed to Kenya. The BIA then upheld the IJ's denial of her application, and Hamilton subsequently departed the United States as required by the removal order. Hamilton now petitions for review of the BIA's denial of her cancellation application.

Special rule cancellation under VAWA provides that the Attorney General may grant cancellation of removal to an applicant upon a demonstration that (1) she has been "battered or subjected to extreme cruelty" by a United States citizen spouse; (2) she has been physically present in the United States for a "continuous period of not less than 3 years" immediately preceding the date of the application; (3) she "has been

-4-

a person of good moral character during such period"; (4) she is not inadmissible or deportable under certain specified parts of the Act and has no aggravated felony conviction; and (5) her removal would result in "extreme hardship" to her. 8 U.S.C. § 1229b(b)(2)(A).

We lack jurisdiction to review the Attorney General's discretionary decision not to grant cancellation of removal. 8 U.S.C. § 1252(a)(2)(B)(i); see Sanchez-Velasco v. Holder, 593 F.3d 733, 735 (8th Cir. 2010). Nor may we review "any other decision or action of the Attorney General . . . the authority for which is specified . . . to be in the discretion of the Attorney General." 8 U.S.C. § 1252(a)(2)(B)(ii). We do however retain jurisdiction over any "constitutional claims or questions of law" raised in Hamilton's petition, 8 U.S.C. § 1252(a)(2)(D), which are reviewed "de novo, according substantial deference to the agency's interpretation of immigration statutes and regulations." 593 F.3d at 735. Our review is thus of the BIA order, which is the final agency decision, "including the IJ's findings and reasoning to the extent they were expressly adopted by the BIA." Fofanah v. Gonzales, 447 F.3d 1037, 1040 (8th Cir. 2006).

Hamilton argues that the IJ and the BIA applied the wrong legal standard in concluding that she had failed to show "extreme hardship" by employing a "partial circumstances test" instead of evaluating the totality of the circumstances. The regulations provide that to establish extreme hardship an applicant "must demonstrate that deportation would result in a degree of hardship beyond that typically associated with deportation" and list a number of factors that may be considered in making this determination. See 8 C.F.R. § 1240.58(b) & (c).

The agency's determination that Hamilton would not be subjected to extreme hardship upon removal is discretionary and thus not reviewable by our court. See Zacarias-Velasquez v. Mukasey, 509 F.3d 429, 434 (8th Cir. 2007). Hamilton attempts to overcome this jurisdictional bar by framing her argument as a legal one,

arguing that the agency applied the wrong legal standard. The BIA had cited the relevant regulation on hardship, however, and concluded that given the evidence presented, Hamilton had not shown that she would experience hardship "beyond that typically associated with deportation." See 8 C.F.R. § 1240.58(b).

Hamilton's argument is really a challenge to the way in which the BIA weighed the relevant factors. For example, she contends that more weight should have been given to the unrest in Kenya, the scarcity of employment opportunities there and lack of availability of professional help, her ties to the United States, and her good moral character. Since Hamilton's hardship argument is essentially a challenge to the BIA's weighing of evidence, we lack jurisdiction to review it. See Gomez-Perez v. Holder, 569 F.3d 370, 373 (8th Cir. 2009); see 8 U.S.C. § 1229b(b)(2)(D) ("The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General.").

Hamilton also argues that the IJ and the BIA applied an unconstitutional "heightened evidentiary standard" to assess her marriage, that the IJ erred in making an adverse credibility finding, and that the IJ erred by concluding that she had not been subjected to extreme cruelty. Since we conclude that we do not have jurisdiction to review the agency's determination that Hamilton has not met the extreme hardship element required for VAWA cancellation, we do not reach her other arguments.

Accordingly, we dismiss the petition for review for lack of jurisdiction.

_____