# United States Court of Appeals
### For the Eighth Circuit

_____

No. 14-3030
_____

Ivan Israel Torres-Balderas

*Petitioner*

v.

Loretta E. Lynch, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: September 22, 2015
Filed: December 8, 2015

_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

_____

MELLOY, Circuit Judge,

Ivan Israel Torres-Balderas petitions for review of an order of the Board of Immigration Appeals affirming an immigration judge's denial of his application for cancellation of removal. The BIA determined Torres-Balderas failed to establish the continuous presence requirement and, therefore, was ineligible for cancellation of removal. Because substantial evidence supports this determination, we affirm the denial of relief and deny the petition for review.

I.    Background

    A.    General Background

    Torres-Balderas, a Mexican native and citizen, entered the United States in 1996 with a border-crossing visa.  He then lost the visa and was not eligible to obtain another.  He returned to Mexico several times in the subsequent fourteen years and reentered the United States several times without inspection. On at least two occasions, border officials apprehended him when he attempted to enter, or shortly after he entered, the United States.  In both instances, he voluntarily departed but later reentered without inspection.  He later assisted the St. Louis Police Department as well as the FBI in matters concerning false documents.  In exchange, he obtained a one-year Significant Public Benefit Parole in late 2007 and a one-year Deferral of Action in early 2009.  Eventually, on April 20, 2010, he received a Notice to Appear charging him with removability.   He admitted removability and applied for cancellation of removal and voluntary departure.

    To be eligible for cancellation of removal, an applicant must prove his continuous presence in the United States for ten years preceding the Notice to Appear.  See 8 U.S.C. §§ 1229b(b)(1)(A), 1229b(d)(1). Presence is considered non-continuous if broken by one absence from the United States in excess of ninety days or any combination of absences that, in the aggregate, exceed 180 days.   See id. § 1229b(d)(2).  An application for cancellation of removal requires the applicant to list departure and return dates for trips outside the United States.  The applicant also must sign, swear, and affirm the truth of the application to the best of his knowledge.

    In his application, Torres-Balderas initially reported four absences from the United States after entering in 1996.  He did not report any absences specific to his post-apprehension voluntary departures.  The IJ noticed he also had not listed an absence in relation to his own 2003 wedding in Mexico.  The IJ permitted Torres-

Balderas to amend his application to include this event. With the reported wedding-related absence, his five reported absences totaled exactly 180 days (not counting the days of departure or return).[1]

At his hearing, Torres-Balderas presented evidence material to the several elements a removable alien must establish to prove eligibility for cancellation of removal. The IJ found him credible but ruled against him as to every element, denied cancellation of removal, and permitted voluntary departure. Although the IJ found Torres-Balderas credible, much of his testimony simply lacked clarity and precision, thus creating ambiguities. Further, the IJ had to make several findings regarding the duration and dates of trips because Torres-Balderas's imprecise testimony differed from the dates and durations he reported in his application. The IJ stressed that Torres-Balderas had sworn to the veracity of his application and that the burden of proof rested with Torres-Balderas to establish his continuous presence. On appeal, Torres-Balderas challenged the IJ's ruling as to each element, but the BIA addressed only the continuous presence requirement. Like the BIA, we address only the continuous presence requirement.

B.    February 1999/June 2000 Absence

Torres-Balderas testified that he obtained an I-94 card in Mexico during his 1999 trip, re-entered the United States using the card, but was apprehended at a check point sixty miles inside the United States where officials identified the card as fraudulent. At that point, he voluntarily returned to Mexico. When questioned about

---

[1]Because we reach the same conclusion in this case regardless of whether we discount the days of departures and returns, we assume such days are not considered days absent from the United States. The departure and return dates listed in Torres-Balderas's application were as follows: 02/01/1999 to 03/01/1999 (27 days); 02/01/2003 to 03/02/2003 (28 days); 01/01/2004 to 02/01/2004 (30 days); 03/01/2004 to 05/01/2004 (60 days); 01/25/2008 to 03/01/2008 (35 days).

these events, Torres-Balderas told the IJ that he must have incorrectly reported the dates of his trip because he was only apprehended once with a fraudulent I-94 card and his voluntary removal record indicated he had been apprehended on July 4, 2000. Based on this testimony, the IJ determined the trip had occurred in June 2000 rather than February 1999. This determination brought the trip within the ten-year window preceding the Notice to Appear. The IJ attributed a thirty-day absence to this trip, stating that the trip occurred in June rather than February but otherwise took place as reported in the application.

###### C.     February 2003 Trip

Torres-Balderas listed a twenty-eight day absence related to his wedding. He testified that he traveled to Mexico and spent time with his future wife every day for about "a month" prior to their wedding. He also stated, however, that this pre-wedding visit may have lasted only fifteen to twenty days. He stated that he and his new wife came to the United States about one week after their wedding. The IJ found the unclear testimony sufficiently similar to the times listed in the sworn application to accept the application's description of a twenty-eight-day absence.

###### D.     January 2004 Trip

The dates listed in the application for a January 2004 trip indicated a thirty-day absence from the United States. During testimony, Torres-Balderas initially indicated the duration listed in the application was accurate. He later equivocated as to the duration of this trip. The IJ, relying on the application and Torres-Balderas's confirmation of its accuracy, relied on the dates listed in the application because he was unsure of the exact dates when testifying.

E.    March–April 2004 Trip

The IJ accepted the dates as listed in the sworn application for a sixty-day trip to Mexico from March 1 through May 1, 2004.  These dates were consistent with Torres-Balderas's testimony, and the IJ noted that a series of hotel bills dated from May 25, 2004 through July 13, 2004, supported the claim that he had returned to the United States by May 2004.

F.    January–February 2008 Trip

The IJ accepted the dates of the 2008 trip as listed in the application.  The dates of this thirty-five-day trip were consistent with physical evidence of Torres-Balderas's presence in the United States and consistent with his testimony at the hearing.  Further, Torres-Balderas indicated he was stopped at the border in relation to this trip, but the IJ did not add any time to the duration of the trip associated with such a stop.

Based on these individual determinations, the IJ concluded Torres-Balderas had been outside the United States for "at least 183 days."  The BIA affirmed.

II.    Discussion

When the BIA adopts the opinion of the IJ with added analysis, we review both opinions as reflecting the agency's judgment.  Setiadi v. Gonzales, 437 F.3d 710, 713 (8th Cir. 2006).  The continuous-presence determination is "a nondiscretionary determination" that is not subject to the jurisdiction-stripping provisions of the REAL ID Act.  Hernandez-Garcia v. Holder, 765 F.3d 815, 816 (8th Cir. 2014).  Our review of the continuous-presence determination is narrowly constrained, however, because "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude the contrary."  Sanchez-Velasco v. Holder, 593 F.3d 733, 735–36 (8th Cir. 2010) (quoting 8 U.S.C. § 1252(b)(4)(B)); Hassan v. Gonzales,

484 F.3d 513, 516 (8th Cir. 2007) ("[F]actual determinations must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole."). The applicant bears the burden of proving continuous presence. See Sanchez-Velasco, 593 F.3d at 736; 8 U.S.C. § 1229a(c)(4)(A)(i) ("An alien applying for relief or protection from removal has the burden of proof to establish that the alien . . . satisfies the applicable eligibility requirements.")

Here, the IJ found absences totaling at least 183 days, thus "breaking" Torres-Balderas's continuous presence and rendering him ineligible for cancellation of removal. In doing so, it appears the IJ may have mistakenly attributed thirty days of absence for the June 2000 trip when, if the IJ had accepted the one-month duration as set forth in the application (as the IJ purported to do), the absence would have been twenty-nine days. Even taking this reduction into account, the absences still added up to 182 days, thus exceeding 180 days. Further, in reaching this overall count, the IJ did not attribute any additional time outside the United States due to the separate voluntary departure and return after Torres-Balderas's July 4, 2000 apprehension.

Torres-Balderas nevertheless argues the record does not support the IJ's determination because the IJ expressly found him credible but refused to rely exclusively on his hearing testimony. He argues specifically that the IJ imposed an insurmountable burden of proof and demanded evidence and specificity that was not reasonably available. In making these arguments, Torres-Balderas fails to acknowledge that the sworn application itself is evidence and that the IJ is required to "weigh the credible testimony along with other evidence of record." Sanchez-Velasco, 593 F.3d at 736 (quoting 8 U.S.C. § 1229a(c)(4)(B)); 8 C.F.R. § 1240.9 ("The hearing before the immigration judge, including the . . . applications . . . shall constitute the record in the case."). Here, in each instance where the IJ relied on the application rather than the testimony, the corresponding testimony, while deemed credible, was unclear or imprecise. A positive credibility assessment simply does not

elevate imprecise or unclear testimony to the level where an IJ must accept it as defeating more clear and more specific prior sworn statements from the application.

III.    Conclusion

We affirm the BIA and deny the petition for review.

_____